21-2186 North Dakota, United States v. Timothy Beston, Jr. Very good. Ms. Quinn? Good morning. Can you see and hear me okay? Yes. Thank you. May I proceed? Please do. Court is ready. May it please the court, my name is Molly Quinn. I represent the appellant Timothy Beston, Jr. We're asking the court to deny the motion to dismiss the appeal, vacate the restitution award, and remand for specific performance of the plea agreement as it relates to the restitution. I'll start with the restitution issue. The nearly $31,000 restitution award violated the MVRA in this case. Mr. Beston agreed to pay restitution for all loss caused by his conduct under the MVRA. And the MVRA provides a clear formula for the district court to determine the loss amount in the case of damaged property. And that is the value of the property on the date of the damage, loss, or destruction, less the value of any property that is returned. And the district court failed to determine the value of property on either of these key dates in this case, starting with the value of the property on the date of the damage, loss, or destruction, which is what the MVRA says the district court should do first. Under the facts of this case, where Mr. Beston pleaded guilty to malicious mischief, not to stealing the vehicle, the key date for the first prong of the formula was the he drove the vehicle into the lake. And there's no evidence on the value of the vehicle on that date. There's no evidence on whether that vehicle, by the time that Mr. Beston had it on that day, had any pre-existing damage, or whether there had been depreciation from that value being taken by the lot by another person. Whether the original sticker price, whatever that was, whether the value of the vehicle had automatically lost some thousands of dollars just by virtue of being taken off the lot. And so there's, in this record, there's absolutely no evidence on what the vehicle was worth to Gateway Chevrolet, the original owner of the vehicle, when Beston had the vehicle the day that he drove it into the lake. And then with regard to the second prong of that loss formula, loss determination formula, which is the value of the property that is returned, there's absolutely no evidence in this record either on the value of the vehicle after it was on that. At most we have the district court called on the probation officer as a non-testifying witness, and the probation officer said, well I assumed the vehicle was totaled. But that doesn't mean that there's absolutely no value to this vehicle, that it was a 100% total loss and just had to be thrown in the dump. There's no evidence on whether any repairs were made to the vehicle. We know it was looked at by a collision center, that's in the PSR, and they identified a range of the vehicle. But we don't know what it would have cost to repair that damage. The PSR doesn't tell us what the estimate was to repair it. We don't know whether any repairs were made, and if so, the cost of those repairs. We don't know the salvage value of this vehicle, if it was sold as a salvage vehicle with a different kind of title, and either whether the dealership or the insurance company, even who kept title or ownership of that vehicle, what they were able to receive for it as a salvage vehicle. We don't know whether this vehicle was sold for parts, and if so, what money came in, again, either to the insurance company or to the dealership. We don't even know on this record who had the vehicle, what the value was after the property was recovered. And so under these circumstances, the district court erred in awarding nearly $31,000 in restitution. Counsel, was the sentencing remote? No, it was not. It was in person. All right, and did the dealer, anyone appear on behalf of the dealer? I don't believe so. I would have to look back specifically. I recall that there was a discussion at the beginning about the victims being notified, and they certainly weren't called as a witness. And I would, to fill that in, I believe that the probation officer appeared by telephone. They were not there in person. Yeah, I saw that, but the dealer didn't appear by phone or in person. Not, at least they weren't called as a witness. I hesitate to make a claim that I can't confirm without looking. Do we know, does the record, do we know everything that the, all information the dealer provided either to the prosecution or to the probation officer? We have this sticker price. What else did they give? All we have, I guess, I don't know. I'm privy to information that would have been provided to the government. What we know is we have won the figure in the plea agreement. You know what the government presented at sentencing. Exactly, which there was no evidence presented. Looks to me like the government didn't make a record adequate for a meaningful appellate review. I agree, your honor. I think that we have. If you could address the appeal waiver before your time runs out. As I understand the plea agreement, it says that Beston waives his right to appeal, quote, any restitution order, unquote. Why isn't that dispositive? It's not for three reasons, your honor. First is the government committed a plain breach of the plea agreement, which I can talk about in more detail. Well, I understand that argument, but you didn't object and so you'd have to meet the plain error standard. As I understand our case is to avoid the waiver. So we'd have to go through whether there's a reasonable probability of a different outcome. So go ahead. What are your other two reasons? I disagree with that, your honor. I think that if you go back to the Lovelace case itself, that all that was required to just, excuse me, to deny the government's motion to look at the actual facts, there were basically two issues raised for the appeal. One was the breach of the plea agreement to get through the appeal waiver. And then there was a separate sentencing issue about, I believe it was information that the district court brought to the proceedings, but didn't disclose to the parties. And in Lovelace itself, which is the seminal case on an unobjected to breach being a defense to appeal waiver, they did find a plain did not find the third prong of plain error review, but still denied the motion to dismiss. And then went on to consider the totally unrelated sentencing issue and actually reversed on that basis. Well, we look at that, but they spend a lot of time deciding what will be the standard. And they say, you have to meet the plain error standard to get through the waiver. And then what about the helper case? Doesn't it do the same thing? I think that the helper case had already found there wasn't a plain breach before going on to consider the third prong. And I would also point the court to this sales opinion. I'll move on. Counsel, before you move on, do you think that really there was a breach of the plea agreement in the fact that the district court at the sentencing recognized the recommendation of the United States per paragraph 18, recommending restitution in the amount of $16,950. But I know there was a lot of talk at the sentencing, but at the end of the day, doesn't that pretty clearly indicate that the court understood what the recommendation of the government was? I guess I agree with the last part of your question, but that would go to the prejudice question at most. But I do believe that there was a plain breach of the plea agreement. First, because that was after all of this discussion had happened with regard to the restitution amount. The government promised in paragraph 18 of the plea agreement that at sentencing, they would recommend the $16,950. They never made that recommendation. But moreover, the government actually advocated for the higher amount that appeared in the PSR. The government argued that despite the number in the plea agreement, victims deserve to be made whole. The number in the plea agreement didn't take into account the insurance company or towing bill. This is government counsel. That's something that's partially my fault, and I admit that. But the case law does indicate that victims deserve to be made whole. And then later on in this exchange about restitution, a defense counsel had argued that the number in the plea agreement represented Mr. Beston's contribution to the criminality, and the number in the plea agreement, or excuse me, in the PSR did not, because he wasn't guilty of the theft of the vehicle. And after he had recommended that the $16,000 was the number that represented the loss caused by his conduct, government counsel immediately said, Your Honor, I guess I would disagree with that assessment. And then advocated, essentially advocated for the higher number in the PSR. So I do believe that there was a plain breach. And before I reserve time for rebuttal, Judge Powerton, I do want to go back to the Rule 11 argument on the appeal waiver. Our position is that the plea colloquy in this case was inadequate under Rule 11B1N in this court's Bone Shirt opinion to ensure that there was a knowing and voluntary waiver of the right to appeal restitution. Well, in Bone Shirt, the judge didn't even mention the appeal waiver. This case is certainly not that. The judge brought it up specifically, and the defendant said he signed agreement in the record, right, where he signed the document, yeah. There is a plea agreement, and I am about out of time, but I would point to, I believe we cited at least three cases in the response to the motion to dismiss where there was at least some discussion of the appeal waiver on the record, and the court declined to enforce the appeal waiver under Bone Shirt and Rule 11. And those are at least Silk, Ramirez, and Slaughter. Are they published? They are not. Well, we have a lot of unpublished opinions that may overread Bone Shirt as saying that more than it really says. So we will have to look at that. But why wouldn't it, I guess, with Judge Loken's permission, I would ask why didn't this comply with Rule 11? I mean, the judge did, all Rule 11 says is you have to cover the plea, the appeal waiver during the colloquy, and the judge did cover it. Well, I think Rule 11 says that the court must inform the defendant of and determine that he understands the terms of any appeal waiver, and this was just a brief, you're waiving your right to appeal, that's paragraph 22, yes. There was no discussion of the specific terms of this, what was really, compared to others, kind of a complicated and long appeal waiver, and certainly no discussion. Do you tell the client to take a plea? Do you line by line? I didn't personally appear with Mr. Bestin at his plea hearing, and I would, I guess, note that when it comes to enforcing the appeal waiver, this is a de novo review where the government has the burden of establishing. No, I'm just asking about what Rule 11 means, whether you're really saying that you have to, the judge has to read line by line the entire waiver? At the law, or what do you think it requires? I think it requires discussion of, as it says, the terms of the appeal waiver, and this was, this wasn't enough for this long and complicated appeal waiver, and certainly didn't cover a waiver of the right to challenge restitution. Thank you. Very good. Ms. Dietz? Thank you, your honor. May it please the court, my name is Dawn Dietz. I'm appearing on behalf of the United States District of North Dakota. I'm the prosecuting attorney on this case. I did appear at the sentencing hearing with regard to the case of the plea agreement. Why didn't you make the recommendation? Had you never, did you not read our helper decision before the sentencing proceedings? Your honor, I did not read the helper decision before the sentencing hearing. Did you read any of our cases? If you make a promise, you keep the promise. You promised to recommend, and you didn't do it. How many times do we have to say you got to do it right? I understand that, your honor, but there are also, there's also case law, specifically the helper decision, as well as the Jeffries court that indicates that it does not have to be an enthusiastic recommendation to the court. You didn't make the recommendation, and not only that, you went on and you, you gathered up information to defeat the recommendation, and then, and put it before the court through the probation officer, and then argued that government ought to, not do what you had promised to recommend. Well, I believe that the MVRA is different than that of a sentencing in position. I'm not talking about what the statute says. I'm talking about basic fairness and following the law, and I, I, I, I, I authored helper. Judge Benton and I let the government get away with it in helper, and Judge Kelly very carefully pointed out that we were, we were wrong to be, to, to overlook a plain mistake, but here it comes, here it comes again. So how many, how many times do we have to tolerate government lawyers refusing to do it right? Well, your honor, I think there are other interests that come into play, a 30 part, third party interest that come into play with regard to restitution. I think the government keeping its promises is, is over, is overriding, and so does the Supreme Court. I understand your honor, but there are other interests that come into play with regard to the issue of restitution. Why didn't the dealer, why didn't the dealer show up? If he wanted, if he wanted the government to, to lawyer for him, why wasn't he there? The dealership and the insurance company, as well as the towing bill were submitted to the government through the victim impact statements, which are found in the record. I don't care about the bills, the, the, the, you want the person there when the banker, when the banker said I was defrauded out of, you know, $7,463.82, and as a piece of paper that some clerk prepared, the banker gets cross-examined. I agree. Ideally, it would be best practice to have the victim actually there, but it doesn't always happen that way, which is why the... Because you didn't even tell the court what, I don't think you told the court exactly what the dealer provided, or everything. Am I wrong? Your honor, the materials that were provided by the dealership are found in district court document 29-1 that includes... Every piece of paper that you represent, that everything, every, all information that the government got from the, from the dealer and the insurer is in the record, in the record on appeal. That's the information that we received that was made part of the record in district court document 29-1. That includes the receipts from the towing company and the other information from the insurance company, as well as the gateway dealership company itself as well. Focusing on... Ms. Dietz. Yes, your honor. On this question of the breach, I give you credit for showing up today. Usually in these breach cases, the government sends a different lawyer, so I appreciate that. But I am concerned that you seem to be saying, well, in restitution cases, there are other considerations of third parties as though you're almost saying you don't have to comply with plea agreements because of the third party interest. Is that really your position, or are you acknowledging that the government must and should have here made the recommendation? I acknowledge, your honor, that the government should and must comply with the, with the plea agreements. As I noted, I think... So then do you, do you, in retrospect, agree that there wasn't a proper recommendation here, or... Well, your honor, I believe that... How do you interpret this transcript? Yes, your honor. I apologize for interrupting. Your honor, I think the transcript is pretty clear that there is no position that the defendant's position through his defense counsel, Mr. Besson's position can be found on page 10 as well as page 11. And I'm talking about the question whether there's a breach by the government. I don't believe that the record reflects that there is a breach by the government, because found on page 10 and 11, Besson's attorney indicated on two separate occasions, this is the recommendation of the parties. Then finally, on page 12 of the sentencing transcript, the district court indicated, and I want to make sure I quote this correctly, the district court stated that, I don't believe the record reflects that regardless of the recommendation of the United States. He doesn't say the recommendation of the parties. He doesn't say the recommendation of the defendant. He says the recommendation of the United States. You mean, so you think because the defense attorney and the judge both acknowledge the recommendation, that's sufficient to satisfy the agreement? Yes, your honor. Pursuant to the helper and the Raff Snyder case, looking at the Raff Snyder case, it specifically indicates that there is no indication that any remark from the government or the cause of the district court sentencing decision. And based upon the sentencing transcript, that being Judge Welty's order, specifically on page 12, it was clear that Judge Welty believed that that was the recommendation of the parties and made his own findings based upon the PSIR. And the case law indicates further that the PSIR alone is sufficient to calculate the value. That's found in the Blooper-Morris case, the Bett case, as well as the May case. The court relied on the unobjected two facts with regard to making its findings with regard to the restitution order. I understand that the argument that was made by defense counsel at the sentencing hearing was basically, he shouldn't be held accountable for the theft because he did not steal the car. That he should only be held accountable for the conduct of his criminality, that being driving the vehicle into the lake. As the record demonstrates, based upon the PSIR, which is District Court document number 29, the vehicle was operable before it went into the lake. In fact, the PSIR outlines... Counsel, let me tell you my value problem. I think the numbers are absurd. If the insurer paid $30,000 based on the sticker price of the car, it was either stupid or got ripped off by the dealer. The car couldn't have been worth, before or after it was in the lake, that much more than the sticker price. So this whole award to me has no credence to it. Well, your honor, as previously indicated, the court can rely on unobjected two facts in the record. There's no objection... But you didn't produce the witnesses. This was all pieces of paper with no foundation, all hearsay, nobody to cross-examine. This is just ridiculous to me. Well, again, your honor, the court can rely on unobjected two facts in the PSIR, which is what the District Court did with regard to this case. Furthermore, the Finesca case indicates that it's reasonable for the court to assume that the insurer payment reflects the fair market value of the restitution. What did you just say? I repeat that, you said that real fast. I apologize, your honor. The Finesca case indicates that it's reasonable to assume that the insurer payment of the fair market value for restitution is appropriate. Okay, give me the site of that case. Yes, your honor, it's the Finesca, I'm probably saying it wrong, F-O-N-S-E-C-A, which your honor authored the opinion. I can provide the exact citation if I can have just one moment. Okay, well, if I author it, I can find it. What's the unobjected to information to which you're referring? Thank you, your honor. The unobjected to information is the facts and circumstances of the value of the vehicle and the criminality of the conduct. That's outlined in the PSIR. First, looking at paragraph six of the PSIR, it indicates that the vehicle was valued at $31,000. Does that deal with the problem, whether that's the value at the time it went into the lake? Well, I believe the corresponding documents with regard to the value of the vehicle is outlined in the victim impact statement and the receipts after the vehicle was pulled out of the lake. As I indicated before... For what information other than the sticker price? Well, the information... And the amount the insurer paid, stupidly paid. The documents that are provided, that were provided by the insurance company, as well as the... Do they, was the car on the lot for sale? Do we know what the price was being, the dealer was offering the car for? Your Honor, I don't know if that's specifically outlined in the record. If we had that number, we would know that the value was less because the dealer isn't going to sell it without a profit. And restitution is not intended to provide unrealized profit. Of course, Your Honor. Sticker price is not nearly as probative as what he was offering it for when it was stolen, right? I'm sorry, Your Honor, could you say that again? The sticker price, the original sticker price, is not nearly as probative of value at the time of the theft, to say nothing of when it went in the lake, as what the dealer was, what he was offering it for. What was the price on the windshield? We can't say with 100% certainty with regard to that. You didn't do your homework. Well, the vehicle... We know the vehicle was operable before it went into the lake. The only thing that made it inoperable was Mr. Beston's actions of driving it into the lake. If there are no further questions, we request that the court dismiss the appeal as there was no miscarriage of justice as outlined in the plea agreement, which specifically called for the defendant to pay any restitution or an appeal, waived his appeal with regard to restitution as found in paragraphs 20 and 22 of the plea agreement. If the court finds that there was a violation of the plea agreement, a breach of the plea agreement, we believe an alternative is to affirm the district court order as there is no plain error, because Beston cannot show that his substantial rights were prejudiced. Thank you. Thank you, counsel. Appreciate the candor and argument. That was very helpful. And the case, it's an interesting case. It's been well briefed and argued, and we'll take it under advisement.